## HALE v. FROST.

1. Mortgages of the road and present and subsequently acquired property of a railroad company, executed to secure the payment of its bonds, are, while it retains possession, a prior lien upon the net earnings of the road.
2. The net earnings, while the road is in possession of a receiver appointed by the court, may be applied to the payment of claims having superior equities to that of the bondholders. *So held*, where from such earnings payment was made to parties who had, before his appointment, furnished the company with car-springs, and spirals and supplies for its machinery department, which he continued to use in carrying on the business of the road.

APPEAL from the Circuit Court of the United States for the District of Iowa.

Between 1867 and 1873, The Burlington, Cedar Rapids, and Minnesota Railway Company, a corporation duly organized under the laws of Iowa, built and put in operation its main line from Burlington, *via* Cedar Rapids, to Plymouth; the Pacific Division, extending west from the main line at Vinton; the Muscatine Division, extending from Muscatine west across the main line; and the Milwaukee Extension, extending from

the main line near Cedar Rapids to Postville. The main line was mortgaged May, 1869; the Pacific Division, September, 1871; the Milwaukee Extension, January, 1872; and the Muscatine Division, July, 1872. The mortgages were made to trustees to secure the bonds of the company, and covered the road, all rights of way, rolling-stock, and equipment; all implements, fuel, and materials for the construction, operating, repairing, or replacing the road or any of its branches; and also all franchises connecting with or relating to the road, which were then held or might thereafter be acquired by the company; and also all rights, claims, and benefits in and to all leases, contracts, and agreements then made or which might thereafter be made with any parties whomsoever, together with all and singular the tenements and appurtenances thereunto belonging, and the reversions, remainders, tolls, incomes, rents, issues, and profits thereof, and also all the estates, rights, titles, and interests whatsoever, as well at law as in equity, of the company. The mortgages were authorized by statute, and were in due time and in the proper offices recorded.

The company, Nov. 1, 1873, made default in paying interest due for the preceding six months. The bondholders funded their interest coupons due respectively at that date and at six and twelve months next thereafter, and allowed the company to retain the possession of the road. The company, May 1, 1875, again made default in the payment of interest; and on the 19th of that month the trustees filed a bill against the company, to foreclose the several mortgages. A receiver was thereupon appointed by the court, who took immediate possession of the road and its branches. The company has never since had possession of them, or received any of the rents or profits thereof.

When the company first made default in the payment of interest, there was a " floating debt " of about $1,600,000, for equipment, construction, repairs, wages, taxes, &c. Between Nov. 1, 1873, and May 1, 1875, the gross earnings of the main line and branches were about $1,772,249.74; and the net earnings during the same time, over and above operating expenses, taxes, &c., were about $550,000, all of which were disbursed in the payment of the " floating debt." The company owed, Nov. 1, 1873,

for back wages to employés, taxes, and current supplies then on hand and subsequently used by it, about the sum of $150,000. When the receiver was appointed, May 19, 1875, there was due for back wages to employés, $81,250.02, and for current supplies, about $60,000. The records of the court below show that while the railway and branches were under his control their net earnings, over all operating expenses, for eight and one-third months, were $337,540.35.

The Union Car-Spring Manufacturing Company, Dec. 6, 1875, and the firm of Hale, Ayer, & Co., Aug. 18, 1875, intervened and filed their respective petitions. Each prayed for an order upon the receiver to pay its claim.

The facts were agreed upon, and it appears therefrom that the car company sold and delivered to the railway company during the month of April and the last of March, 1875, car-springs and spirals of the value of $469.42, which the receiver after his appointment continued to use, and for which nothing had been paid; that Hale, Ayer, & Co., Aug. 1 and 10, 1873, had an accounting and settlement with the railway company, in which it appeared that it was then indebted to them, including interest, in the sum of $21,738.92.

At sundry times and in various amounts the sum of $12,295.74 was paid on account of the notes given in settlement of said indebtedness of $21.738.92, of which $5,919.25 was for supplies to machinery department, $14,944.24 for materials for construction purposes, and $875.43 interest.

Another settlement was made Jan. 20, 1874, for $6,955.63 due from said company to them, being $4,422.99 for invoices of supplies for machinery department, $2,208.75 for material for construction purposes, and $323.89 interest.

The company's note for $1,552.78, given to them for supplies for machinery department in August, 1872, matured Feb. 13, 1874, and the total amount due them was $17,951.59, for which they held the overdue notes of the company. No mechanic's lien was claimed. The judges below were opposed in opinion upon the following points claimed by the interveners : —

1. That the railway mortgage is a prior lien only upon the net earnings of the road, after the payment of all the operating expenses, while the road is in the possession of the company.

2. That after the default in the payment of the interest Nov. 1, 1873, the fact that the mortgagees funded their coupons and left the company in possession of the road constituted the company their agent and trustee in equity, and they are now estopped from objecting to the payment from the earnings of the road of all legitimate debts contracted by the company for operating expenses.

3. That the net earnings of the road, while in the possession of the court, and operated by its receiver, are not necessarily and exclusively the property of the mortgagees, but are subject to the disposal of the Chancellor in the payment of claims which have superior equities, if such shall be found to exist, and that these intervening petitioners' claims have superior equities to those of the mortgagees.

The petitions were dismissed, and the interveners appealed here.

*Mr. Charles A. Clark* and *Mr. N. M. Hubbard* for the appellants.

*Mr. James Grant* for the appellee.

MR. CHIEF JUSTICE WAITE announced the decision of the court.

The first question certified in this case is answered in the affirmative, upon the authority of *Fosdick* v. *Schall*, *supra*, p. 235.

The third question is answered in the same way upon the same authority. The Union Car-Spring Manufacturing Company is entitled to payment in full, and Hale, Ayer, & Co. to payment of so much of their claim only as is for supplies to the machinery department. There is nothing in the case to show any special equities in their favor in respect to that part of their account which is for material for construction purposes.

An answer to the second question is unnecessary.

The several decrees appealed from will be reversed, and the cause remanded with instructions to enter decrees in favor of the appellants for the amount due them respectively from the fund in court, upon the principles settled by the answers which are given to the questions certified; and it is

*So ordered.*